**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**NICOLE L. CHAVIES,**

   *Plaintiff*,

  **v.**

**BALTIMORE CITY BOARD OF SCHOOL
COMMISSIONERS,** *et al.*,

   *Defendants*.

        **Civil No.: 1:24-cv-01543-JRR**

**<u>MEMORANDUM OPINION</u>**

This matter is pending before the court on the following motions: Defendant Baltimore Teachers Union's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 42), Defendants Keith Zimmerman and Kahn, Smith & Collins, P.A., d/b/a KSC Law's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 46) (construed as a motion to dismiss), Defendant Baltimore City Board of School Commissioner's Motion to Dismiss Count III and Count IV of Plaintiff's Amended Complaint (ECF No. 48) (collectively, the "Motions"), and Plaintiff's Motion for Return to Administrative Leave with Pay Status (ECF No. 56).  The court has reviewed all papers; no hearing is necessary.  Local Rule 105.6 (D. Md. 2025).  For the reasons set forth below, by accompanying order, the Motions will be granted and the Motion for Return to Administrative Leave with Pay Status will be denied as moot.

## I.  BACKGROUND[1]

### A. Factual Background

*Pro se* Plaintiff Nicole L. Chavies, a resident of Gwynn Oak, Maryland, is employed as a School Psychologist by Baltimore City Public Schools at Waverly Elementary/Middle School and Calvin Rodwell Elementary/Middle School.  (ECF No. 39 ¶ 1.)  Plaintiff is a member of the Baltimore Teacher's Union ("BTU"), which has a Collective Bargaining Agreement ("BTU Agreement") with the Baltimore City Board of School Commissioners (the "Board" or "BCBSC").[2]  *Id.* ¶ 14.  The BTU Agreement sets forth provisions governing employee discipline, evaluations, and grievance procedures concerning BTU members.  *Id.* ¶ 15.

### 1.  *Plaintiff's Allegations Against BCBSC*

On January 7, 2022, Plaintiff was placed on administrative leave with pay by BCBSC. (ECF No. 39 ¶ 16.)  The letter notifying Plaintiff of the decision to place her on administrative leave provides "that 'serious allegations' called into question Plaintiff's 'suitability to perform her duties' and 'the nature and severity of [those] allegations necessitate[d] [Plaintiff's] assignment be modified pending a Loudermill Hearing.'"[3]  *Id.*  A Loudermill Hearing was subsequently held on January 26, 2022, at which Plaintiff was represented by John Casey, a BTU Field Representative. *Id.* ¶ 17.  Plaintiff claims she "immediately raised concerns about the impartiality of Loudermill Hearing officer Mr. Grant" due to his "bias toward school leadership" and her requests for a fair hearing were ultimately ignored.  *Id.* ¶ 18.

---

[1] For purposes of resolving the Motions, the court accepts as true all well-pled facts set forth in the Amended Complaint.  (ECF No. 39.)  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

[2] In her Amended Complaint, Plaintiff refers to Defendant Baltimore City Board of School Commissioners as the "School Board".  (ECF No. 39 ¶ 2.)  In its Motion and subsequent papers, Defendant refers to itself as "BCBSC." (ECF No. 48.)

[3] A *Loudermill Hearing* refers to a hearing to provide public employees the opportunity to be heard in advance of decisions bearing on termination of employment or severe workplace discipline.  *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 523 (1985).

Plaintiff asserts that after the Loudermill Hearing, on March 5, 2022, her pay was "arbitrarily revoked" and she was placed on administrative leave without pay, and with no clear or reasonable explanation from BCBSC. (ECF No. 39 ¶¶ 18, 19.) On the same date, Plaintiff received a letter including "a Statement of Charges recommending Plaintiff's termination for alleged [wilful] neglect of duty, insubordination, and misconduct." *Id.* ¶ 20. On March 11, 2022, Plaintiff submitted a request for an evidentiary hearing before BCBSC pursuant to MD. CODE ANN., EDUC. § 6-202 and Board Policy BLB.[4] *Id.* ¶ 21. Plaintiff has remained on unpaid administrative leave for over three years without being formally terminated, and although she initially requested a hearing before BCBSC, she sought a postponement of the hearing due to lack of proper notice. *Id.* ¶ 22. Plaintiff claims that as a result of being denied her salary and benefits, she has faced significant financial hardship (including having to file for bankruptcy relief) and she has been unable to secure employment with any other school district. *Id.* ¶ 23.

### 2. *Plaintiff's Allegations Against BTU*

Plaintiff contends that because she is a member of the teacher's union, Defendant BTU was her "exclusive bargaining representative" and owed her a duty of a fair representation. (ECF No. 39 ¶ 24.) Plaintiff alleges BTU failed to: (1) adequately represent her interests when BCBSC placed her on administrative leave and subsequently suspended her without pay; (2) ensure BCBSC followed proper procedures for employee discipline as outlined in the BTU Agreement;

---

[4] MD. CODE ANN., EDUC. § 6-202(a)(2) provides:

> (I) Before removing an individual, the county board shall send the individual a copy of the charges against the individual and give the individual an opportunity within 10 days to request:
> > 1. A hearing before the county board; or
> > 2. A hearing before an arbitrator in accordance with paragraph (5) of this subsection.
> (II) If an individual's request does not specify that the hearing be before an arbitrator, the request shall be considered a request for a hearing before the county board.

(3) pursue or adequately process grievances regarding BCBSC's actions against her; and (4) provide effective representation to challenge BCBSC's actions and protect her employment rights. *Id.* ¶¶ 25–28.

### 3. *Plaintiff's Allegations Against KSC Law and Keith Zimmerman*

Defendant BTU assigned attorneys from Defendant The KSC Law Firm f/k/a Kahn, Smith & Collins, P.A. ("KSC Law") to represent Plaintiff in her employment dispute before BCBSC. (ECF No. 39 ¶ 29.) Plaintiff was initially represented by attorney Heather Heilman until on or about July 11, 2023, when Heilman left KSC Law. *Id.* ¶ 30. Thereafter, Defendant Keith Zimmerman, another attorney at KSC Law, was assigned to represent Plaintiff. *Id.* ¶ 31. Plaintiff alleges Mr. Zimmerman pressured her to resign from her position and represented he would negotiate a "neutral" professional reference on her behalf should she resign. *Id.* ¶ 32. According to Plaintiff, Mr. Zimmerman unilaterally terminated his representation of Plaintiff on or about September 23, 2023, after Plaintiff requested that he advocate more zealously on her behalf instead of pressuring her to resign. *Id.* ¶ 33.

Plaintiff further contends that no just cause was provided by KSC Law or Mr. Zimmerman for terminating their representation, and neither KSC Law nor BTU provided Plaintiff with replacement counsel, thereby leaving her without representation while on unpaid administrative leave. (ECF No. 39 ¶¶ 33–34.) Plaintiff also alleges that Mr. Zimmerman failed to (1) obtain and provide her with complete documentation from BCBSC regarding the basis for her administrative leave and (2) challenge BCBSC's procedural violations and pursue available remedies to restore Plaintiff to paid status. *Id.* ¶¶ 35–36.

**B. Procedural History**

Plaintiff initiated this action on May 28, 2024, against Defendants BCBSC, BTU, KSC Law, and Keith Zimmerman. (ECF No. 1.)  In response to Plaintiff's Complaint, KSC Law and Mr. Zimmerman filed a Motion for More Definite Statement (ECF No. 13), and BCBSC and BTU each filed a Motion to Dismiss.  (ECF Nos. 14, 22.)  On February 26, 2025, granted the Motion for More Definite Statement and denied the Motions to Dismiss as moot.  (ECF No. 38.)  The order required Plaintiff to file an amended complaint because her Complaint was unclear as to what Plaintiff alleged as to each Defendant, what causes of action she was pursuing and on what basis, and failed to abide Rules 8 and 10 of the Federal Rule of Civil Procedure.  *Id.*

On March 18, 2025, Plaintiff filed an Amended Complaint (ECF No. 39), which asserts the following claims:

Count I: Breach of Duty of Fair Representation (against BTU);

Count II: Legal Malpractice (against KSC Law Firm and Keith Zimmerman);

Count III: Procedural Due Process Violation under 42 U.S.C. § 1983 (against individual BCBSC officials in their individual capacities);

Count IV: Breach of Contract (against BCBSC).

(ECF No. 39 ¶¶ 37–56.)  Plaintiff seeks declaratory and injunctive relief; back pay from March 5, 2022, to present, plus interest, from BCBSC; compensatory damages for financial losses, emotional distress, and other alleged harm; punitive damages against KSC Law and Mr. Zimmerman; reasonable costs and attorneys' fees; and other relief "as the [c]ourt deems just and proper." *Id.* at p. 6.

On April 8, 2025, Defendants filed the instant Motions.  (ECF Nos. 42, 46, 48.)  On June 9, 2025, Plaintiff filed an omnibus response to the Motions and the Motion for Return to

Administrative Leave with Pay Status.  (ECF Nos. 55, 56.)  Defendants thereafter filed their respective replies.  (ECF Nos. 57, 59, 61.)

## II.    LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(d)

Defendants KSC Law and Keith Zimmerman bring their Motion as a motion to dismiss or, alternatively, for summary judgment.  (ECF No. 46.)  "A motion with this caption implicates the court's discretion under FED. R. CIV. P. 12(d)."  *Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022).  Federal Rule of Civil Procedure 12(d) provides, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  FED. R. CIV. P. 12(d).  "Pursuant to Rule 12(d), the Court has discretion to determine whether to accept evidence outside the pleadings, and thus convert a Rule 12(b)(6) motion to a Rule 56 motion."  *Coleman v. Calvert Cnty.*, No. GJH-15-920, 2016 WL 5335477, at *3 (D. Md. Sept. 22, 2016) (citations omitted).

"There are two requirements for a proper Rule 12(d) conversion."  *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). "First, all parties must 'be given some indication by the court that it is treating the Rule 12(b)(6) motion as a motion for summary judgment,' which can be satisfied when a party is aware 'material outside the pleadings is before the court.'"  *Snyder,* 2022 WL 980395, at *4 (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)).  Second, the parties must first "be afforded a reasonable opportunity for discovery."  *Gay*, 761 F.2d at 177.

The present case is in its infancy and there has been no discovery.  In light of the above, and where, as here, the court need not consider matters outside the pleading, the court declines to

convert Defendants KSC Law and Mr. Zimmerman's Motion, and will therefore treat the Motion as one to dismiss under Rule 12(b)(6).

### B. Federal Rule of Civil Procedure 12(b)(1)[5]

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019). Subject matter jurisdiction challenges may proceed in two ways: a facial challenge or a factual challenge. *Id.* A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction." *Id.* A factual challenge asserts "that the jurisdictional allegations of the complaint [are] not true." *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). "In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Id.* (quoting *Kerns*, 585 F.3d at 192 (instructing that in a facial challenge to subject matter jurisdiction the plaintiff enjoys "the same procedural protection as . . . under a Rule 12(b)(6) consideration")). "[I]n a factual challenge, 'the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.'"[6] *Id.*

Defendant BCBSC raises a facial challenge to the court's subject matter jurisdiction, asserting that Eleventh Amendment immunity bars Plaintiff's § 1983 claim against it. (ECF No. 48-2 at p. 12.) The defense of sovereign immunity is a jurisdictional bar because "sovereign

---

[5] In addition to Rules 12(d) and 12(b)(1), the Motions invoke review under Rule 12(b)(6); however, because the court grants the Motion under Rule 12(b)(1) grounds only, the court does not set forth the standard applicable when reviewing a motion to dismiss under Rule 12(b)(6).

[6] Because the court addresses BCBSC's jurisdictional arguments only as to Eleventh Amendment sovereign immunity, and Defendants do not offer exhibits in support of same, the court need not consider the attached exhibits in addressing the jurisdictional argument.

immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)). "Given the unique attributes of sovereign immunity, we have held that the burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject matter jurisdiction." *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) (citing *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014)).

## III.    ANALYSIS

As an initial matter, the court is ever mindful that pro se filings "must be construed liberally, . . . so as to do substantial justice," and are held to less stringent standards than filings drafted by lawyers. *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *Erickson v. Paradus*, 551 U.S. 89, 94 (2007); FED. R. CIV. P. 8(f); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "In practice, this liberal construction allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). Such liberal construction, however, does not absolve Plaintiff from pleading a plausible claim, and this court "may not act as an advocate for a self-represented litigant" by "conjur[ing] up" issues not presented. *Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 351 (D. Md. 2020) (quoting *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

### A. Plaintiff's Section 1983 Claim (Count III)

As each of the Motions addresses the different claims asserted by Plaintiff against each Defendant, the court begins by addressing BCBSC's argument regarding Plaintiff's sole federal claim, the § 1983 claim (Count III), which implicates the court's subject-matter jurisdiction.

#### 1. *Official vs. Individual Capacity*

In assessing the viability of Plaintiff's § 1983 claim, the court first must address her contention that this claim is asserted against individual officials of BCBSC in their individual capacities. (ECF No. 39 at p. 5.)

"[W]hen a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). "[T]he underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." *Id.*

"Personal capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (emphasis in original). Additionally, the Fourth Circuit has held that factors indicating that a state official is being sued in an individual capacity include "plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom . . . [and] plaintiff's request for compensatory or punitive damages, since such relief is unavailable in official capacity suits." *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995).

Plaintiff alleges that "[i]ndividual officials of [BCBSC], acting under color of state law, deprived Plaintiff of her property interest without adequate due process" in violation of her Fourteenth Amendment rights.  (ECF No. 39 ¶¶ 50–51.)  As noted by BCBSC in its Motion, Plaintiff fails to identify any individual officials of the Board either in her initial Complaint or Amended Complaint, and no individual officials have been served with notice of her claims.  (ECF No. 48-2 at pp. 13–14.)  Plaintiff fails to attribute the actions she complains of to specific individuals of the Board; nor does she identify any individual Board member (whether by name or Doe pseudonym) in the caption of her Amended Complaint.  *See Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009) (holding "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Although the court acknowledges Plaintiff generally seeks "compensatory damages against all Defendants[,]" she names only Defendants BCBSC, BTU, KSC Law, and Mr. Zimmerman as Defendants in this action.  (ECF No. 39 at p. 6.)

In her Amended Complaint, Plaintiff adds: "To the extent [BCBSC] as an entity is immune from suit under § 1983, Plaintiff reserves the right to amend this complaint to name individual [BCBSC] officials who were personally involved in the deprivation of her constitutional rights." *Id*. ¶ 52.  Plaintiff has already been afforded the opportunity to amend her complaint and to name the individual officials.  Moreover, the language of the Amended Complaint suggests that Plaintiff knows the identity of the individuals she claims violated her constitutional rights and chose not to personally identify them.

Here, Plaintiff's intention to hold liable individual officials of BCBSC cannot be ascertained fairly.  Accordingly, the court will address Plaintiff's § 1983 claim as against BCBSC as an entity only.

### 2. *Eleventh Amendment Sovereign Immunity*

Defendant BCBSC asserts that Plaintiff's § 1983 claim against it is barred by Eleventh Amendment sovereign immunity. (ECF No. 6-1 at pp. 7-9.) Plaintiff fails to address this argument in her omnibus response to the Motions and thus concedes the point. (ECF No. 55.)[7]

The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI.   Under the Eleventh Amendment, states generally enjoy immunity from suit unless a state waives its immunity, or the immunity is abrogated by Congress. *See Bd. of Tres. v. Garrett*, 531 U.S. 356, 363–64 (2001) (explaining that "[t]he ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court. We have recognized, however, that Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." (citations omitted)); *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019) (providing that "state sovereign immunity bars all claims by private citizens against state governments and their agencies, except where Congress has validly abrogated that immunity or the state has waived it."). As explained above, a finding that a defendant enjoys sovereign immunity on a claim presents a jurisdictional bar to the court's adjudicative power over such claim. *Cunningham v. General Dynamics Info. Tech*., 888 F.3d 640, 649 (4th Cir. 2018).

Sovereign immunity also operates to bar suit against state agencies. *McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *see Pennhurst State*

---

[7] The court notes that Plaintiff's omnibus response to the Motions fails to address any of Defendants' arguments and instead evaluates each of the exhibits attached to the Motions because Plaintiff contends that "Defendants have made assertions not validated within the documentation they have provided." (ECF No. 55 at p. 2.)

*Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–102 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). This court has repeatedly held that BCBSC is an arm of the state. *See N.T. v. Balt. City Bd. of Sch. Comm'rs*, JKB–11–356, 2012 WL 3028371, at *2 (D. Md. July 24, 2012) (stating BCBSC is "a local board of education that, under Maryland law, is considered a state agency"); *Downing v. Baltimore City Bd. of Sch. Comm'rs*, No. CIV.A. RDB-12-1047, 2012 WL 6615017, at *4 (D. Md. Dec. 18, 2012) (holding that BCBSC is "an arm of the state . . . entitled to Eleventh Amendment immunity"); *Shank v. Baltimore City Bd. of Sch. Comm'rs*, No. CIV.A. WMN-11-1067, 2014 WL 198343, at *2 (D. Md. Jan. 14, 2014) (holding that BCBSC "is an arm of the state and, as an arm of the state, is entitled to immunity from suit under § 1981 and § 1983"). BCBSC is thus a state agency entitled to sovereign immunity.

"The Fourth Circuit has identified three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state." *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 409 (D. Md. 2022); *Anderson v. Dep't of Pub. Safety & Corr.*, No. 24-1339, 2024 WL 4814882, at *1 (4th Cir. Nov. 18, 2024) (identifying the three Eleventh Amendment immunity exceptions). The three exceptions include:

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 [121 S. Ct. 955, 148 L.Ed.2d 866] (2001) . . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 [124 S. Ct. 899, 157 L.Ed.2d 855] (2004) . . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 [122 S. Ct. 1640, 152 L.Ed.2d 806] (2002).

*Doe.*, 595 F. Supp. 3d at 409 (quoting *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012)).

Notably, "Congress has not abrogated sovereign immunity for § 1983 suits[.]" *Biggs v. N. Carolina Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)). Moreover, Maryland "has not waived its immunity under the Eleventh Amendment to suit in federal court." *Pevia v. Hogan*, 443 F. Supp. 3d 612, 632 (D. Md. 2020) (citing MD. CODE ANN., STATE GOV'T § 12-202(a)); *see also Morgan v. Copper State Univ.*, No. SAG-20-0427, 2021 WL 5280893, at *5 (D. Md. Nov. 12, 2021) (noting "Maryland has not waived its sovereign immunity as it pertains to federal statutory claims.").

As to the second exception, "suits for 'prospective injunctive relief against state officials acting in violation of federal law' are permitted" pursuant to the *Ex parte Young* exception. *Eller v. Prince George's Cnty. Pub. Sch.*, 580 F. Supp. 3d 154, 168 (D. Md. 2022) (citing *Ex parte Young*, 209 U.S. 123 (1908)). As explained *supra,* because Plaintiff fails to identify any individual BCBSC officials acting in violation of federal law, the *Ex parte Young* exception is inapplicable here.

Accordingly, the court will dismiss Count III, the § 1983 claim, as against BCBSC for lack of subject-matter jurisdiction.[8]

---

[8] The court need not address BCBSC's argument concerning the failure to exhaust administrative remedies or merits of any Title VII claim purportedly asserted by Plaintiff. (ECF No. 48-2 at pp. 15–18.) No such claim is asserted in Plaintiff's Amended Complaint. (ECF No. 39.) An amended complaint replaces the original complaint filed. "[A]n amended pleading ordinarily supersedes the original and renders it of no legal effect." *Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.)*, 226 F.3d 160, 162 (2d Cir. 2000)) (holding that "if an amended complaint omits claims raised in the original complaint, the plaintiff has waived those omitted claims."). Accordingly, Plaintiff's Amended Complaint is the operative complaint, which does not set forth a Title VII claim.

## B. Plaintiff's State Law Claims

Because Plaintiff's sole federal claim will be dismissed, only Plaintiff's state law claims for breach of duty of fair representation, legal malpractice, and breach of contract (Counts I, II, and IV) against Defendants remain for consideration. BCBSC argues if the court grants its Motion to dismiss Plaintiff's federal claims, the "[c]ourt may but is not required to exercise supplemental jurisdiction [over] the state law claims." (ECF No. 48-2 at p. 19.) Again, Plaintiff fails to address this argument.

"When a district court has jurisdiction over a federal claim under 28 U.S.C. § 1331, it also has supplemental jurisdiction over related state-law claims."[9] *Kovachevich v. Nat'l Mortg. Ins. Corp.*, 140 F.4th 548, 556 (4th Cir. 2025). 28 U.S.C. § 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." "Section 1367 contemplates that when an amended complaint is filed, the jurisdictional basis for the suit is reviewed anew. If nothing in the amended complaint now falls 'within [the federal court's] original jurisdiction,' then neither does anything fall within the court's 'supplemental jurisdiction.'" *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 34 (2025) (quoting 28 U.S.C. § 1367(a)).

"Where a district court dismisses all federal claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure . . . the district court is precluded from exercising supplemental

---

[9] Here, Plaintiff only asserts that the court has subject-matter jurisdiction over this action based on a federal question pursuant to 28 U.S.C. § 1331. (ECF No. 39 ¶ 6.) Pursuant to 28 U.S.C. § 1332, federal district courts also have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[,]" also known as "diversity jurisdiction." 28 U.S.C. § 1332(a)(1). There can be no diversity jurisdiction in this case. As the court explained *supra,* Defendant BCBSC is an arm of the State and is not a citizen of Maryland for purposes of § 1332(a). "[A] State is not a 'citizen' for purposes of the diversity jurisdiction." *Moor v. Alameda County*, 411 U.S. 693, 717 (1973).

jurisdiction over the remaining state-law claims." *Cangemi v. United States*, 13 F.4th 115, 134 (2d Cir. 2021); *see Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (explaining that "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety"); *Mains v. Citibank, N.A.*, 852 F.3d 669, 680 (7th Cir. 2017) (concluding that "[w]hen a district court does not have subject-matter jurisdiction over federal claims, it cannot exercise supplemental jurisdiction over any state claims under 28 U.S.C. § 1367"); *Crosby v. City of Gastonia*, 635 F.3d 634, 644 (4th Cir. 2011) (explaining that "[h]ad the federal claims in this matter truly been susceptible to dismissal solely for lack of subject matter jurisdiction, as the district court supposed, its discretionary exercise of supplemental jurisdiction over the state-law claims would have been problematic").

Here, because Plaintiff's sole federal claim is dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1), the court is precluded from exercising supplemental jurisdiction over the remaining state law claims. Accordingly, the remaining state law claims—Counts I, II, and IV—will be dismissed without prejudice.

**C. Plaintiff's Motion for Return to Administrative Leave with Pay Status**

On June 9, 2025, Plaintiff filed a Motion for Return to Administrative Leave with Pay Status. (ECF No. 56.) Plaintiff claims that the exhibits attached to Defendants' Motions improperly characterize her as being "terminated" as opposed to being on administrative leave with pay. *Id.* at p. 2. As a result, Plaintiff requests that the court "correct" the classification to reflect her status as being on administrative leave, a return to "pay status", and a return of all retroactive pay from March 2022 to the date of filing of the instant motion, June 9, 2025. *Id.* Defendants did not file a response.

Plaintiff's motion merely seeks relief already requested in her Amended Complaint. (*See* ECF No. 39 at p. 6.) As the court will dismiss all counts of Plaintiff's Amended Complaint, it lacks the authority to grant the relief requested in the motion. Therefore, the Motion for Return to Administrative Leave with Pay Status will be denied as moot.

## IV.   **CONCLUSION**

For the reasons set forth herein, by separate order, the Motions (ECF Nos. 42, 46, 48) shall be granted and Plaintiff's Motion for Return to Administrative Leave with Pay Status (ECF No. 56) shall be denied as moot.

/S/

March 3, 2026

_____

Julie R. Rubin
United States District Judge